[Civ. No. 956.    Third Appellate District.—July 2, 1912.]

In the Matter of the Estate of ALBERTINA OLSON, Deceased. WILLIAM JOHNSON, ALBERT M. JOHNSON, HILDA HUBBARD, AMY JAMES, and BESSIE JOHNSON, EARL JOHNSON and MABEL JOHNSON, Infants, by CARRIE JOHNSON, Their Guardian, Contestants of Will, Respondents, v. OLIVER OLSON, Proponent of Will, Appellant.

CONTEST OF WILL—UNDUE INFLUENCE—PLEADING—PHYSICAL OR MENTAL WEAKNESS OF TESTATRIX OR MENACE, DURESS AND FRAUD NOT INVOLVED.—Upon a contest of the probate of a will in favor of a husband forty-three years of age, made to him by his wife sixty-

three years of age, based upon the charge of undue influence exercised by him over his wife to obtain her will to him of all of her property, worth $20,000, to the exclusion of her five children and three grandchildren, the contestants are not required to allege the mental or physical weakness, or want of mental capacity of the testatrix, nor that she was acting under menace, duress, or fraud. None of such allegations is necessary to establish the charge of undue influence.

ID.—EFFECT OF SOUNDNESS OF MIND AND BODY—IMMUNITY FROM UNDUE INFLUENCE NOT IMPLIED.—Soundness of mind and body of the maker of a will does not imply the immunity of the maker from undue influence. Undue influence is quite distinct from testamentary capacity, and presupposes its existence. Though it may require greater ingenuity to unduly influence a person of sound mind and body, and more evidence may be required to establish it, than in the case of one weak of body and mind, yet the minds of strong men and women have often been overborne, and unduly influenced to make a will which they would not otherwise have made.

ID.—NATURE OF "UNDUE INFLUENCE"—RELATION TO "FRAUD" AND "UNFAIR ADVANTAGE."—Though neither menace, duress or fraud is essential to establish "undue influence," yet it is, in a certain sense, "a fraud," when exercised to the injury of the rightful heirs of the maker of the will and to the advantage of the one exercising it. It is of the nature of "undue influence," that it consists of "any improper or wrongful constraint, machination, urgency or persuasion, whereby the will of the person is overborne and he is induced to do an act which he would not do, or would do, if left to act freely," or, as defined in section 1575 of the Civil Code: "Undue influence consists: 1. In the use by one in whom a confidence is imposed by another, and who holds a real or apparent authority over him, of such confidence or authority, for the purpose of obtaining an unfair advantage over him."

ID.—RELATION OF CONFIDENCE AND TRUST—BUSINESS AGENCY—HUSBAND AND WIFE.—A relation of confidence is alleged to have existed between the husband and wife, both before and after their marriage, by a business agency for her during her former widowhood, and after their marriage, as well as from the relation of husband and wife. Though that relation alone does not, in this state, raise a presumption of undue influence in the making of a will, yet it is important in weighing the evidence indicating it.

ID.—DEMURRER TO GROUNDS OF CONTEST NOT SUSTAINABLE—GROUNDS TO BE CONSIDERED IN THEIR ENTIRETY.—Upon demurrer to the grounds of contest, they must be considered in their entirety and disjointed parts cannot be looked to in determining their sufficiency; and thus considering the grounds alleged, it is held that the facts alleged in

the contest as a pleading are sufficient to withstand a general demurrer thereto.

ID.—SUFFICIENCY OF FINDINGS—PRESUMPTION OF SUPPORT IN ABSENCE OF EVIDENCE.—Where the findings clearly establish the ultimate fact alleged, that the will in question was procured by the undue influence of the husband exerted over his wife, and substantially conforms to the allegations of the grounds of contest, and are sufficient to support the judgment for the contestants, it must be presumed, in the absence of the evidence from the record, that they were supported by sufficient evidence.

ID.—STATEMENT IN WILL AS TO ADVANCES TO CHILDREN REBUTTED BY FINDINGS—ABSENCE OF PRESUMPTION.—A statement inserted in the contested will to the husband that advances had been made by the wife to her children and grandchildren of their full share cannot be presumed to be true, where it is clearly rebutted by the findings, which establish that the contest involved all of the property ever owned by the testatrix.

APPEAL from a judgment of the Superior Court of Alameda County.   J. D. Murphey, Judge Presiding.

The facts are stated in the opinion of the court.

W. B. Rinehart, and Crosby & Richardson, for Appellant.

G. W. Hunter, and P. H. Ryan, for Respondents.

CHIPMAN, P. J.—This is an appeal on the judgment-roll from the decree of the superior court of Alameda county, refusing probate of the will of Albertina Olson, wife of Oliver Olson, appellant herein.   A general demurrer to the grounds of contest was overruled, no special demurrer was interposed, and Olson, contestee, answered, denying specifically the averments of the contest relating to the issue of undue influence. The cause was tried by the court without a jury and contestants had judgment.

The will is brief.   It first declares that the testatrix is of sound mind, and is "not acting under duress, menace, fraud or undue influence of any person whatever"; secondly, it devises and bequeaths to Oliver Olson, her husband, all of her property, and further states: "I have eight descendants, to wit, five children [naming them] and three grandchildren [naming them] whom I purposely omit from the provisions of this will, as I have already advanced and paid to each of

them his or her full share of my property." Lastly, she appoints her husband executor without bonds.

The "descendants," except Elfrida Hall, a daughter, are the contestants mentioned in the will.

It is contended by appellant, first, that the written grounds of contest are insufficient to constitute grounds of opposition to the probate of the will; and, second, that the findings are insufficient to support the judgment.

The findings, with slight difference in one or two particulars, follow the language of the complaint.

The ground alleged in support of the contest is the undue influence of the husband over his wife in securing the execution of the will. It appears from the contest: That Mrs. Olson died in the city of Oakland, Alameda county, on February 13, 1910, leaving estate therein and in Humboldt county of the value of over $20,000; that, prior to her death, to wit, September 11, 1908, she executed the will in question, naming her husband executor thereof; that, on April 21, 1910, Oliver Olson, contestee, filed his petition in the superior court of Alameda county, praying probate of said document as the last will of his wife, Albertina, and that letters testamentary issue to him. Following these averments, it is alleged, in paragraph VII: That Oliver Olson and Albertina were married in Humboldt county on August 5, 1905, from which time and until her death, "and particularly at the time of making her alleged will and testament, the said Albertina Olson reposed great confidence in her said husband, the said Oliver Olson, and during all times the said Oliver Olson held a real authority over the said Albertina Olson, and during all said time the said Oliver Olson used such confidence and authority for the purpose of obtaining an unfair advantage over her to procure her to make her alleged will solely in his favor, and thereby disinheriting all of her said children and grandchildren." Paragraph VIII following is to like effect, alleging "an apparent authority" instead of "a real authority," as in paragraph VII. Paragraph IX is as follows: "That said alleged will and testament offered for probate as the last will and testament of said Albertina Olson was procured to be made by reason of and through the undue influence exerted upon and over her by said Oliver Olson, in whose sole favor and interest such will was made and that

said paper writing and alleged will was and is the direct
result of such undue influence exerted as aforesaid and that
said Albertina Olson was not at the time of the making of
the said alleged will free from undue influence, but was then
and there and for a long time prior thereto had been, and
continued to be, acting under and subject to the undue in-
fluence of said Oliver Olson, and that the said alleged will
was procured to be made by means of and through the undue
influence of said Oliver Olson, and the said will was the di-
rect result of the undue influence exerted by said Oliver Olson
over and upon said Albertina Olson, and in further support
of these averments of undue influence, contestants allege upon
information and belief the following facts.'' Then follow
twenty-three or twenty-four subdivisions of paragraph IX,
designated, alphabetically, ''a'' to ''w,'' inclusive. Substan-
tially, the facts therein set forth are as follows: (a) that at
the time of their said marriage Olson was a strong man, men-
tally and physically, of the age of forty-one years, and Alber-
tina was of the age of sixty-three years, and was the mother of
six children, mostly grown; (b) for several years prior to
the marriage of Oliver and Albertina she resided on a farm
in Humboldt county, the community property of herself and
her husband, Adam Johnson, who died in May, 1898; (c)
for several years prior to the marriage of Oliver and Albertina
the said Oliver was employed on said farm by Albertina, and
during all said time ''had great and undue influence over''
her, then Albertina Johnson, ''and managed her said farm
and business to suit himself, and sold the crops raised on
said farm and collected the money received therefrom and con-
ducted the household affairs of said Albertina Johnson,'' pur-
chased the farm and household supplies, and used the income
of the farm for such purposes ''and for his own purposes the
same as if it was his own money''; (d) prior to and after
his marriage with Albertina, and thereafter, he in like manner
managed said farm and used the income therefrom; (e) on
or about September, 1906, he induced Albertina to remove to
Oakland to reside, ''with the object and purpose in his mind
of getting her where she would be more susceptible to his in-
fluence and more subject to his control''; (e½) during the
spring of 1898 the said Adam Johnson contemplated making
a trip to the Klondike, Alaska, and on or about the tenth day

of February, 1898, he, "without consideration, executed a deed to said farm to Albertina, which was placed in escrow, to be delivered at his death, which said deed was thereafter at his death delivered to her"; (f) in August, 1906, Albertina sold said farm for $37,500, receiving $21,500 in cash and notes and mortgages for the balance; (g) the said Oliver took over $20,000 of said money to Oakland and deposited the same there in a bank in his own name, and drew therefrom money "as he saw fit and invested a large part of the same and used much of the same for his own purposes"; (h) Albertina was "ignorant of and inexperienced in business affairs and methods, and through the undue influence of the said Oliver" was induced to permit him to invest a large part of said money in Oakland property, amounting to $6,000, "and to take the title thereto in his own name"; (i) "at all times mentioned herein" Oliver was "the sole agent, confidential adviser and business manager of the said Albertina Olson and as such gained a complete mastery and control over her"; (j) long prior to her said marriage with him, Oliver conceived the plan of acquiring possession of Albertina's property, and had the design to marry her for said purpose, and "during the year 1901 the said Oliver Olson proposed to one Walter James, who was then courting one of the daughters of said Albertina Olson, and said to said Walter James, 'You take the girl and I will take the old lady; we will sell the place and get out of here'"; (k) Albertina was so "strongly under the influence of the said Oliver Olson that within two months after the death of her former husband, Adam Johnson, she permitted the said Oliver Olson to use and wear the clothes formerly used and worn by her deceased husband"; (l) at all times mentioned herein Oliver showed a feeling of jealousy and hatred toward the children and grandchildren of Albertina, "and unduly persuaded" her to disinherit them; that she could not speak of them in his presence in terms of affection without incurring his displeasure, and she was in constant fear of him lest she might say something to offend him; that he sought to make her believe that she owed no duty to them, and that they cared for her only for her property; that he objected to her corresponding with her said children or to receive letters from them, and was angry "and berated her" when she did so; that he

unduly persuaded her to remove from Humboldt county "to get away from her children, whose homes were in said county, in order that he might have a better opportunity to unduly influence the said Albertina Olson, and get control of her said money and property and to have the same put in his own name; that said Albertina Olson was continually under the influence and control of said Oliver Olson, and subject to his will and was compelled to put her money and property in his own name, and to make said alleged will leaving everything to him"; (m to r) the relations between Albertina and her children, to the time of her death, were of a friendly nature; Oliver sought to prejudice his wife against her said children, and often told her she must not let them visit her; that in September, 1908, Oliver, at the home of one of the contestants, "for the purpose of unduly influencing" her against her said children, declared to her that she "should cut out the kids with a dollar," meaning her children and grandchildren; that he, for like purpose and with like intent, told Albertina that he did not want Mrs. Hubbard to come near her, and that she must make a will and cut Mrs. Hubbard out with one dollar; that prior to making said will, for the purpose of unduly influencing her, he said to Albertina that she should cut Freda out with one dollar, meaning her daughter Mrs. Elfrida Hall; (s) at the time said alleged will was made "said Oliver Olson accompanied the said Albertina Olson to the office of the attorney in the city of Eureka, who prepared said alleged will, at the time said alleged will was prepared, and took an active part in the preparation of the same"; (t) at this time they were visiting Amy James, one of the daughters and contestants, and during this time Oliver urged Albertina to make her will, and, (u) when they went to the office of the attorney to have said will prepared, neither Oliver nor Albertina informed said Amy James of their said purpose, but concealed from her and from all said children and grandchildren the fact that a will had been made, and none of said children or grandchildren knew of said will until after her death; (v) that during said marriage of Oliver and Albertina, Oliver was acting as the confidential agent of Albertina, and during all said time she was subject to the undue influence and control of her said husband, who "took advantage of his said position and influence

19 Cal. App.—25

to obtain said alleged will and acquire said property''; (w) "that by reason of said relations aforesaid, and the exercise of undue influence over her as averred in the complaint and grounds of opposition herein, the said Oliver acquired over the mind of the said Albertina Olson an influence whereby he was enabled to and did procure her to make the said alleged will, wherein and whereby all her property was to go to him to the exclusion of all the rest of her heirs at law.''

Appellant relies upon the rule stated in *Estate of Gharky,* 57 Cal. 274, and *Estate of Sheppard,* 149 Cal. 219, [85 Pac. 312], that undue influence as ground of contest is but a conclusion of law to be drawn from facts (not evidence of the facts) which must be stated, "to the end that the court, either upon demurrer to the statement of the grounds of contest or the verdict, may determine whether as a matter of law such facts so pleaded or found constituted a valid reason why the purported paper should not be admitted to probate.'' (*Estate of Gharky, supra.*) Attention is called to the absence of averment or finding that Mrs. Olson was weak in mind or body, or lacked testamentary capacity by reason of her age, or any infirmity, or that she acted under the exercise of menace, duress or fraud. Soundness of mind and body does not imply immunity from undue influence. It may require greater ingenuity to unduly influence a person of sound mind and body, and more evidence may be required to show that such a person was overcome than in the case of one weak of body and mind. But history and experience teach that the minds of strong men and women have often been overborne, and they have been by a master mind persuaded to consent to what in their sober and normal moments, and free from undue influence, they would not have done. "Undue influence is quite distinct from testamentary capacity. The former presupposes the existence of the latter.'' (27 Am. & Eng. Ency. of Law, 497.) Nor are the elements of duress, menace or fraud necessary to be shown to establish such undue influence. Such influence is, in a sense, a fraud when exercised to the injury of the rightful heirs of a testator and to the advantage of the one exercising it, but it is not fraud in the sense used by appellant. Undue influence is "any improper or wrongful constraint, machination, urgency or persuasion whereby the will of the person is overborne

and he is induced to do or forbear to do an act which he would not do, or would do, if left to act freely." (Ibid, 453.) Or, as the Civil Code defines it: "Undue influence consists: 1. In the use, by one in whom a confidence is reposed by another, and who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him." (Civ. Code, sec. 1575.) A relation of confidence and trust is alleged to have existed between Oliver and Albertina both during the several years of Mrs. Johnson's widowhood and during their marriage, arising from Oliver's acting in the capacity of confidential agent at all times and from the relation of husband and wife after he married Mrs. Johnson. It was said in *Welch's Will,* 6 Cal. App. 47, [91 Pac. 337] : "While such confidential relation [husband and wife] does not, of itself, in this state, raise a presumption of undue influence in regard to making a will, yet it is important in weighing the evidence in all cases of this character; in fact, it has been held in some jurisdictions that there is a presumption of undue influence in such cases when such confidential relations exist."

Appellant's attack upon the complaint or grounds of contest is made upon each paragraph separately, claiming, in effect, that the pleader has failed to allege that the particular act pleaded resulted in so far overcoming the will of the testatrix as to lead her to substitute his will for her own and to destroy her free agency. But appellant overlooks the final averment, as well as some others that might be noted, where the pleader avers that by reason of Olson's "aforesaid relations," and by reason of the "undue influence over her as averred in the complaint and grounds of opposition herein, the said Oliver Olson acquired over the mind of said Albertina Olson an influence wherein and whereby he was enabled to and did procure her to make the said alleged will," by which all her property "was to go to him to the exclusion of all the rest of her heirs at law." The grounds of opposition in their entirety must be looked to, and not the disjointed parts, for a right conception of their sufficiency, and, thus considering them, we feel quite certain that the facts alleged are sufficient to withstand a general demurrer.

The story of the relations of these two persons, continuing unbroken from the death of her first husband until the death

of the testatrix, as set forth in the contest, was, we must presume in the absence of evidence, fully confirmed at the trial, and justified the findings of the court. Finding IX, set forth above, is a distinct finding by the court that the will in question was procured through the undue influence exerted over his wife by her husband and "is the direct re- sult of such undue influence exerted as aforesaid," and that the testatrix "was not at the time of the making of the said alleged will free from undue influence, but was then and there and for a long time prior thereto had been, and con- tinued to be acting under and subject to the undue influence of said Oliver Olson," and that the will "was procured to be made by means of and through the undue influence of said Oliver Olson," and "was the direct result of the undue in- fluence exerted by said Oliver Olson over and upon said Al- bertina Olson." Here is the ultimate fact clearly and dis- tinctly found, and, we must presume, on sufficient evidence. If it be claimed that this finding can have no greater force than may be derived from the findings as specifically set forth, still we must hold that as the findings of fact are sub- stantially the same as alleged in the complaint, and as the latter sufficiently set forth grounds of contest, the findings are sufficient to support the judgment.

The court did not find, as was alleged in the contest, that Olson took an active part in the execution of the will, but it did find that he accompanied the testatrix to the attorney's office at the time the will was prepared, "and remained in said office within the hearing of, and in a position so that he could see, the parties in the execution of the said will and departed from said office with said Albertina Olson." This circumstance was pertinent and of probative force, and was properly considered in connection with other circumstances. In the *Estate of Snowball*, 157 Cal. 307, [107 Pac. 601], a similar circumstance was given significance where the favored daughter of the testatrix went to the office of the lawyer with the testatrix, who then made the will "while the daughter remained in another room."

The statement in the will by the testatrix that she had ad- vanced and paid to each of her children and grandchildren his or her full share of her property is urged as going far to rebut any inference of unfairness or undue influence. And

it is claimed that because the statement was not denied in the grounds of contest, it must be presumed to be true. *Shell's Estate*, 28 Colo. 167, [89 Am. St. Rep. 181, 53 L. R. A. 387, 63 Pac. 413], is cited. In that case the testator devised all his property to his second wife, making no provision for his children by a former marriage. The probate of the will was opposed. The testator stated the reason for omitting his children to be that he had made ample provision for them. The ground of contest was undue influence. The cause was tried and the evidence went up with the record on appeal, from which the reviewing court was able to say that there was no attempt made to controvert this fact, and hence the court presumed it to be true, and, thus assuming, found that there was nothing unnatural in not making provision for the children of the first wife. We do not think we can indulge a presumption that the statement referred to in the will now here was true. There is a finding (XXI) that the testatrix "was continually under the influence and control of Olson and was subject to his will and was compelled to put her money and property in his name and to make said alleged will leaving everything to him." Other findings show that the contest involved all the property ever owned by the testatrix and rebut any inference that she had given her children and grandchildren their full share or indeed any share of her property.

We do not feel called upon to comment further upon the facts as alleged and found, or to controvert the inferences indulged by appellant which, he insists, may be drawn in entire harmony with the assumption that the testatrix acted in accordance with her own free and untrammeled will. While such inferences might, under the compelling force of evidence, have justified the court in reaching a different conclusion, still, we think, the facts as found, supported as they must have been by the evidence, fully warranted the court in refusing the probate of the will.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.