[S. F. No. 10646.   In Bank.—September 30, 1924.]

In the Matter of the Estate of ELIZABETH AUGUSTA BIXLER, Deceased.  A. M. BIXLER et al., Petitioners and Appellants; SAMUEL PLUMLEY HAMILTON et al., etc., Opponents and Respondents.

[1] WILLS—CONTEST—UNDUE INFLUENCE—PLEADING.—Where the ground of contest of a will is undue influence it is not sufficient for the pleader to merely allege the legal conclusion of undue influence, but facts must be pleaded from which the court may determine as a matter of law whether the facts so pleaded constitute the claimed undue influence.

[2] ID.—ULTIMATE FACT—PLEADING—CONCLUSIONS.—The allegation of an ultimate fact as distinguished from an evidentiary fact usually, if not always, involves one or more conclusions.

[3] ID.—FRAUD—UNDUE INFLUENCE — PLEADING. — The rule which requires the allegation of facts where fraud or undue influence is the issue does not require the allegation of evidentiary facts, but only that the ultimate facts must be pleaded; and it must be deemed, therefore, not to exclude conclusions of fact but only conclusions of law.

[4] ID.—PROCEEDING TO REVOKE PROBATE OF WILL—UNDUE INFLUENCE —PLEADING — SUFFICIENCY OF ALLEGATIONS OF PETITION.—In this proceeding to revoke the probate of a will upon the ground of the alleged undue influence of a certain person, certain allegations of the petition of contest, when read in the light of other allegations therein, sufficiently allege, without resort to conclusions of law, the ultimate fact that the will was the product of the undue influence of the person charged.

[5] ID.—UNDUE INFLUENCE—ULTIMATE TEST OF.—The ultimate test of the existence of undue influence is whether, on the one hand, the will was "the natural result of the uncontrolled will of the testatrix," or whether, on the other hand, "it represents in fact not her will but that of the person exercising the influence over her."

[6] ID.—PLEADING — INFIRMITY OF TESTATRIX—EVIDENCE.—In a petition of contest of the probate of a will upon the ground of undue influence, an allegation of infirmity of mind and body of the tes-

---

1.  Effect of unnatural testamentary disposition on question of undue influence, notes, 7 Ann. Cas. 894; 6 L. R. A. (N. S.) 202; 22 L. R. A. (N. S.) 1024.  See, also, 28 R. C. L. 148.

5.  See 28 R. C. L. 137.

tatrix is really addressed to the evidence as a circumstance in determining whether or not there was mental domination and control; it has nothing to do with the ultimate fact of domination.

[7] ID.—MOTION FOR JUDGMENT ON PLEADINGS—EFFECT OF.—The motion for judgment on the pleadings of necessity admits for the purposes thereof the truth of all allegations therein which are well pleaded.

[8] ID. — PLEADING — CONSTRUCTION OF ALLEGATIONS IN THEIR ENTIRETY.—In determining whether a petition of contest of the probate of a will states a cause of action based upon undue influence, the allegations of the petition must be looked to in their entirety and not by taking each phrase thereof by itself and analyzing the same.

[9] ID.—PLEADING—UNDUE INFLUENCE—PROFIT FROM WILL.—In such petition of contest, it was not necessary to allege that the person charged with having exercised undue influence profited by the will or even that he was named therein as a legatee, for if in fact the will represents the desire and purpose of such person instead of the desire and purpose of the testatrix and was procured by him by dominating and controlling her mind and will, it is wholly immaterial whether or not he profited or will profit therefrom.

[10] ID. — PLEADING — SUCCESSION. — Under the facts alleged in such petition of contest, the contestants, who are the heirs at law of the predeceased husband of the testatrix, are likewise her heirs as to the property of her estate which came to her from such spouse.

---

(1) 31 Cyc., p. 56; 40 Cyc., p. 1269. (2) 31 Cyc., p. 49 (1926 Anno.). (3) 31 Cyc., p. 52 (1926 Anno.). (4) 40 Cyc., p. 1269. (5) 40 Cyc., p. 1144. (6) 40 Cyc., p. 1269 (1926 Anno.). (7) 31 Cyc., p. 666 (1926 Anno.). (8) 31 Cyc., p. 83. (9) 40 Cyc., p. 1270 (1926 Anno.). (10) 18 C. J., p. 816, sec. 16 (1926 Anno.).

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

Byrne & Lamson for Appellants.

Lee M. Olds and Thomas A. Keogh for Respondents McIntosh et al.

Keyes & Erskine for Respondents Irwin et al.

---

7.  See 15 R. C. L. 579.

Frank McGowan and Charles W. Cobb for Respondent Hyde.

MYERS, C. J.—Contestants appeal herein from a judgment against them upon the pleadings in a proceeding to revoke the probate of a will upon the ground of the alleged undue influence of one Hamilton, who was a proponent of the will and a legatee thereunder. A demurrer, general and special, to the petition of contest having been filed and overruled, answers thereto were filed by the several defendants and the matter coming on for hearing upon the issues so framed defendants objected to the admission of any evidence upon the ground that the petition of contest does not state facts sufficient to constitute a ground of contest. Thereupon defendants moved for judgment on the pleadings upon the same ground, which was granted, and from the judgment so entered this appeal is prosecuted. The appeal thus presents the single question whether or not the petition states facts sufficient to constitute a ground of contest, and by the record as presented to this court that question is further narrowed to the single question whether or not the petition states facts sufficient to justify the revocation of probate upon the ground of undue influence.

The following are the most material allegations of the petition bearing upon this question:

"That at the time of her death the said Elizabeth Augusta Bixler was of the age of over eighty years; that during the last year of her life, and for some time prior thereto, by reason of her age and her physical condition, her mental faculties had become so impaired that she was easily influenced by those in whom she had confidence; that the said Samuel Plumley Hamilton is a young man of the age of about 35 years; that during the last five years prior to her death she made said Hamilton her business manager and confidential agent, and he continued as such until her death; that during said time and up to the time of her death there existed a strange attachment on the part of the said aged decedent for the said young Hamilton, induced by unnatural flattery of the said decedent by the said Hamilton and attentions given the said decedent by the said Hamilton; that this strange attachment existed to such an extent that during the said period and up to the time of the death of

said decedent she kept constant company with the said Hamilton and during a great deal of the time secluded herself with him from her said relatives and household servants; that she consulted the said Hamilton constantly about her business affairs and followed his advice explicitly both in matters of business and in social matters; *that the said decedent reposed confidence and trust in said Hamilton, and he did control and influence her mind and actions to such an extent that she, the said decedent, during said period, did whatever he suggested or instructed her to do;* . . . *that during such period the said Hamilton succeeded in substituting his will for the will of said decedent;* that for many years and up to the time when the said document purporting to be the last will and testament of said decedent was made the said decedent had employed . . . to act as her attorney; that on or about the 19th day of September, 1919, the said Hamilton used his said influence over the said decedent and induced her to visit his attorneys . . . for the purpose of having prepared for her her last will and testament; that the said document purporting to be the last will and testament of said decedent was prepared by the said attorneys . . . at the suggestion of the said Hamilton; . . . that the said Hamilton, *by supplanting his will for that of the decedent* and *by taking advantage of the trust and confidence* reposed in him by the said decedent succeeded in having the decedent devise and bequeath to him by the said document purporting to be her last will and testament approximately one-third of the residue of her estate; that *at the time of the execution of the said document* purporting to be her last will and testament, *the said decedent was not following the dictates of her own will,* which would naturally have led her to have devised and bequeathed all of her estate to her heirs, *but she was acting wholly under the said influence of the said Hamilton who suggested and dictated to her the terms of said will;* . . . that *said purported will was not the free and voluntary act of said decedent, but it was procured to be made by the undue influence of said Hamilton.*"    (Italics added.)

It is respondents' contention, evidently adopted by the trial court, that the foregoing allegations are not allegations of fact, but are mere statements of conclusions of the pleader and are therefore insufficient. Appellants, on the

other hand, contend that all allegations of ultimate facts
necessary to constitute a cause of action upon the ground
of undue influence are stated therein.    [1]   It is well settled
in this state that where the ground of contest is undue in-
fluence it is not sufficient for the pleader to merely allege
the legal conclusion of undue influence, but facts must be
pleaded from which the court may determine as a matter
of law whether the facts so pleaded constitute the claimed
undue influence.    (*Estate of Gharky*, 57 Cal. 274; *Estate of
Sheppard*, 149 Cal. 219 [85 Pac. 312]; *Estate of Streeton*,
183 Cal. 284 [191 Pac. 16]; *Estate of Relph*, 192 Cal. 451
[221 Pac. 361].)   The question, therefore, is whether the
allegations above quoted state mere conclusions of the
pleader or whether they state facts from which the court
can and should conclude as a matter of law that the will
under attack was the product of undue influence.   This
question is by no means free from difficulty.   The lines of
demarkation between conclusions of fact, conclusions of law,
and an admixture of the two, are not clearly defined.
[2]   The allegation of an ultimate fact as distinguished
from an evidentiary fact usually, if not always, involves
one or more conclusions.   For example, the simple allega-
tion that "the defendant executed a promissory note" in-
volves several conclusions of fact based upon the evidentiary
facts of the signing of the instrument, the intent with which
that act was performed, the manual tradition or the con-
structive delivery of the instrument, and the intent with
which that act was performed.   The allegation that "the
defendant by his attorney in fact thereunto duly authorized
executed a promissory note" manifestly involves conclusions
of both fact and law.   Yet under the rules of pleading it
is regarded as an allegation of ultimate fact.   An allega-
tion that the defendant negligently performed a certain
act involves conclusions of fact, and if the claimed neg-
ligence is predicated upon an assumed violation of law,
as is frequently the case, it involves conclusions of both
fact and law.   An allegation that "the plaintiff is the
owner and entitled to the possession of the following de-
scribed premises" involves numerous conclusions of both
law and fact, yet it is universally regarded as good plead-
ing.   [3]   The rule of the authorities above cited, which
requires the allegation of facts where fraud or undue in-

fluence is the issue, does not require the allegation of evidentiary facts, but only that the ultimate facts must be pleaded. (*Estate of Gharky, supra.*) It must be deemed, therefore, not to exclude conclusions of fact but only conclusions of law. [4] We are of the opinion that the italicized portions of the foregoing quotation from the petition of contest herein, when read in the light of the accompanying allegations, do clearly and sufficiently, without resort to conclusions of law, allege the ultimate fact that the will was the product of the undue influence of the person charged. [5] The ultimate test of the existence of undue influence is whether, on the one hand, the will was "the natural result of the uncontrolled will of the testatrix" (*Estate of Snowball,* 157 Cal. 301 [107 Pac. 598]), or whether, on the other hand, "it represents in fact not her will but that of the person exercising the influence over her." (*Estate of Ricks,* 160 Cal. 467 [117 Pac. 539]; *Estate of Arnold,* 147 Cal. 583 [82 Pac. 252].) The petition herein alleges that Hamilton "did control and influence her mind and actions to such an extent that she, the said decedent, during said period, did whatever he suggested or instructed her to do"; "that during such period and up to the time of her death the said Hamilton succeeded in substituting his will for the will of said decedent"; "that the said Hamilton by supplanting his will for that of the decedent and by taking advantage of the trust and confidence reposed in him by the said decedent" procured the execution of the will; that at the time of such execution "the said decedent was not following the dictates of her own will," "but she was acting wholly under the said influence of said Hamilton who suggested and dictated to her the terms of her said will"; "that said purported will was not the free and voluntary act of said decedent, but it was procured to be made by the indue influence of said Hamilton." If those allegations, read in the light of the foregoing allegations of the petition, do not sufficiently allege the claimed ultimate fact that the will here in question was the product of the exercise of undue influence by said Hamilton upon the mind and will of the testatrix, it is difficult to conceive of any method by which this ground of contest could be adequately pleaded. In the case of *In re McDevitt,* 95 Cal. 17 [30 Pac. 101], the allegations of acts

of importunity and undue influence covered a long period of time prior to the date of the execution of the will and this court said: "The appellant contends that the statement of the contest is insufficient, because in the specifications of the facts of undue influence the past tense is used; but I think the concluding sentence, 'that at said date and while in said condition, and unable to resist the importunities of said Andrew McDevitt, deceased made his mark to said pretended will,' sufficiently connects the alleged undue influence with the testamentary act." In *Estate of Sheppard, supra,* relied upon by respondents, the allegation was that Mrs. Reed, "when the mind of said Joseph Sheppard was weak and enfeebled from the infirmities of age and disease, continued to prejudice and unduly influence the said Joseph Sheppard against the petitioner," and this was held insufficient as an allegation of fact. This case was cited and distinguished in *McKenna* v. *McKenna,* 162 Cal. 340 [123 Pac. 532], which was an action to set aside an assignment on the ground of undue influence. It was there alleged that "Catherine McKenna, besides being infirm of mind and body, was without education, could not read or write, and while thus enfeebled was induced by Mary McKenna to make her cross to the assignment by way of affixing her signature thereto; that Catherine McKenna, when she so made her cross as subscription to the assignment, did not know or understand the contents of the instrument, and did not know or understand the significance of the act which she was induced to perform, and finally that, *save for this influence so exercised by Mary McKenna over this debilitated mind, she would not have executed the purported assignment."* (Italics added.) Compare the italicized allegation last quoted with the allegation herein that "The said decedent was not following the dictates of her own will, which would naturally have led her to devise and bequeath all of her estate to her heirs, but she was acting wholly under the said influence of the said Hamilton, who suggested and dictated to her the terms of said will." Compare it also with the allegation in *Estate* of *Stoddart,* 174 Cal. 606 [163 Pac. 1010], that "Said decedent was unable to resist such importunity and pressure, and the same controlled her mind at the time said last will was made, and without the

same decedent would not have made said will.'' As was said by this court in the case last cited:

"It must be borne in mind, throughout this discussion that we are considering the sufficiency of a pleading, and nothing else. A quite different question would be presented if the contest had been tried, and we were called upon to decide whether the evidence introduced warranted a verdict in favor of the contestants. No doubt the petition, whether based upon fraud or undue influence, must allege facts from which it can be seen that one or the other of these grounds of contest exists. The mere averment that the will was induced by fraud or by undue influence is the statement of a legal conclusion, and of no avail by itself. But certainly a pleading of any kind is required to state only ultimate facts, and need not specify in detail the evidence by which it is designed to prove these facts. . . . The pleading alleges, in effect, that the will was not 'the natural result of the uncontrolled will of the testatrix.' (*Estate of Snowball*, 157 Cal. 301 [107 Pac. 598].) This is the ultimate test of the existence of undue influence.''

So, also, in *Estate of Newhall*, 190 Cal. 709 [28 A. L. R. 778, 214 Pac. 231], undue influence was defined to be ''The exercise of acts or conduct by one person toward another person by means of which the mind of the latter is subjected to the will of the person seeking to control it. As applied to a ground of contest of the will of a decedent, undue influence has reference to the means and methods resorted to and employed by a person for the purpose of affecting and overcoming, and which ultimately do affect and overcome, the free and unrestrained will of a testator.'' With reference to the means and methods resorted to for the purpose of overcoming the will of the testator, we note the allegations of the petition herein that the said Hamilton engaged the affections of the testatrix ''by unnatural flattery of the said decedent by the said Hamilton and attentions given the said decedent by the said Hamilton,'' as a result of which she kept constant company with the said Hamilton and during a great deal of the time secluded herself with him from her relatives and servants; that he took charge of her affairs and transacted all of her business; that he induced her to leave her attorney who had attended to her business for many years and to visit his attorneys

for the purpose of having her will prepared, and that the same was prepared by them at his suggestion and at his dictation. In the case of *Murphy* v. *Crowley,* 140 Cal. 141 [73 Pac. 820], an action to cancel a deed on the ground of undue influence, it was alleged that the title to the property in question was taken in the name of the defendant Margaret Crowley ''at her instance and at her dictation, the said Daniel being compelled thereto and overpowered by the dominant will and aggressive energy of the said defendant, Margaret E. Crowley,'' and that from the date of their marriage down to his death the defendant, Margaret, ''exercised a controlling influence over the mind and actions of the said Daniel, managed exclusively his property, and he was under her complete subjection and domination,'' which allegations were held sufficient. In the case of *Stohr* v. *Stohr,* 148 Cal. 180 [82 Pac. 777], also an action to cancel a deed on the ground of undue influence, the allegations were that the defendant lived with the grantor and was her confidential business agent and had an intimate and confidential association and relation with her and had her trust and confidence and was able to and did exercise great influence and control over her will; that at the time of signing the deed the defendant, with intent to take an unfair advantage of the weakness of mind of the said grantor and gain possession of her property, induced and persuaded her to make and acknowledge the deed, and those allegations were held sufficient. In *Yordi* v. *Yordi,* 6 Cal. App. 20 [91 Pac. 348], involving a similar cause of action, the allegations held sufficient were as follows:

''That said Yordi 'for the purpose of causing her [plaintiff] to convey to him [her husband] the said lot of land, without consideration, intimidated plaintiff and exerted upon her the predominating influence which he then had over her by reason of his position as her husband, and used the complete confidence which she then and at all times, until his death, reposed in him, and thereby did then and there cause her, against her will and contrary to her wishes, to make, acknowledge, execute and deliver to him a deed of conveyance of said lot of land without consideration'; that 'plaintiff made—and delivered the said deed to said Fred Yordi solely by reason of his said acts and conduct, and not freely or voluntarily'; that 'said deed was prepared by a

194 Cal.—38

scrivener selected by said Fred Yordi' and under his 'personal direction'; that the property was of the value of $4000; that plaintiff received 'no pecuniary advantage in return for said deed and said Yordi suffered no pecuniary damage therefor,' and that 'plaintiff had no independent advice in said transaction.'"

In *Estate of Olson*, 19 Cal. App. 379 [126 Pac. 171], the court was considering the sufficiency of a petition for revocation of the probate of a will on the ground of undue influence. The allegations of that petition bear a striking resemblance to the allegations of the petition here under consideration. We are unable to distinguish the case made by the allegations of the petition herein from those considered and found sufficient in the several cases last cited. It is true, as pointed out by respondents, that in most of the cited cases it was also alleged that the testator or the grantor, as the case might be, was infirm in mind and body, whereas the petition herein falls short of alleging any mental infirmity of the testatrix at the time of the execution of the will, other than such as might be supposed to accompany her advanced years. [6] But, as pointed out by appellants, "the allegation of infirmity is really addressed to the evidence as a circumstance in determining whether or not there was mental domination and control. It has nothing to do with the ultimate fact of domination." It is undoubtedly more difficult to obtain and exercise domination and control over the mind and will of a person who is in full possession of his mental and physical powers than it is in the case of one whose mental and physical powers have been weakened by age or infirmity. This circumstance may have an important bearing upon the ability or inability of the contestants to prove their case when it comes to trial, but it has none at all upon the question of the sufficiency of their petition. [7] The motion for judgment on the pleadings of necessity admits for the purposes thereof the truth of all allegations therein which are well pleaded.

[8] Respondents in their brief have dissected the petition herein, and taking each phrase thereof by itself and analyzing the same have arrived at the conclusion that it does not state facts sufficient to make a cause of action. But, as was said in the *Estate of Olson, supra,* "The grounds

of opposition in their entirety must be looked to, and not the disjointed parts thereof, for a right conception of their sufficiency.'' So regarding the allegations of the petition herein we are satisfied that they are adequate to state a cause of action for the revocation of the probate of the will. Whether or not the appellants may succeed in proving those allegations upon the trial is a question with which we are not now concerned.

[9] It was not necessary to allege that Hamilton profited by the will here in question or even that he was named therein as a legatee. (*Estate of Cahill,* 74 Cal. 52 [15 Pac. 364].) If in fact the will represents the desire and purpose of Hamilton instead of the desire and purpose of the testatrix and was procured by him by dominating and controlling her mind and will, it is wholly immaterial whether or not he profited or will profit therefrom. [10] Under the facts alleged in the petition the contestants, who are the heirs at law of the predeceased husband of the testatrix, are likewise her heirs as to the property of her estate which came to her from such spouse. (Civ. Code, sec. 1386, subd. 8; *Estate of Watts,* 179 Cal. 20 [175 Pac. 415].)

The judgment is reversed.

Lawlor, J., Waste, J., Richards, J., Shenk, J., Seawell, J., and Lennon, J., concurred.