Filed 10/24/25  Ayala v. Central Coast Agriculture CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTIAN AYALA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CENTRAL COAST AGRICULTURE, INC., <br><br> Defendant and Respondent. | H052789 <br> (Santa Clara County <br> Super. Ct. No. 22CV407762) |

Plaintiffs Christian Ayala and Emmett Reiner filed a putative class action against defendant Central Coast Agriculture, Inc., alleging that defendant's labeling of its "Raw Garden Infused Joints," which are cannabis products, was false and misleading regarding the quantity of tetrahydrocannabinol (THC) contained in the products.  Plaintiffs alleged that the products were "severely underfilled" with respect to THC and that defendant "systematically" overreported the content on the products' labeling.  (Italics omitted.) Plaintiffs alleged that laboratory testing conducted by their counsel and by others supported their claims.

Defendant demurred to the operative complaint for failure to state sufficient facts. Defendant contended that the laboratory testing alleged in the complaint was insufficient to support plaintiffs' allegations that the labels on the products that they actually purchased were inaccurate.  The trial court sustained the demurrer without leave to amend.

For reasons that we will explain, we will reverse the judgment and direct the trial court to vacate its order and enter a new order overruling the demurrer.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. *THC Content in Defendant's Products*

Since we must assume the truth of properly pleaded factual allegations in reviewing an order sustaining a demurrer, our summary of the facts is drawn from the allegations of the operative complaint and matters that have been judicially noticed.  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Committee for Green Foothills*); *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300.)

Defendant's Raw Garden Infused Joints are "cannabis joints."  The " 'single source' " for the cannabis is defendant's own farm.  Defendant manufactures, sells, and distributes the products and is responsible for the packaging and advertising of the products.

Cannabis joints commonly contain THC.  THC is a "a natural compound found in cannabis plants" and "is a highly sought-after cannabinoid."  THC content is among consumers' "top five important" considerations "when purchasing cannabis in retail settings."

Defendant represented that its Raw Garden Infused Joints were " '100% Pure cannabis joints' " that were " 'infused' " with a specified " '[l]ive [r]esin' " and " 'nothing else.' "  This meant that the products were "not just rolled [c]annabis, but also contain[ed] a concentrated THC isolate."  Defendant could "control the total amount of added resin in each batch," which gave defendant "control over the [p]roducts' THC and CBD concentrations."

"Each batch" of Raw Garden Infused Joints was "independently tested, a requirement promulgated by the Department of Cannabis Control."  (Fn. omitted.)  Defendant had "full control" over which laboratories tested its products.

2

Each product's packaging included "a specific purported cannabinoid (*i.e.* THC and CBD) content . . . ." The products were "advertise[d] as having an average THC range between '30%-40%' potency."

Raw Garden Infused Joints were available in different "strains," meaning "different 'aromas' and 'flavors.' " However, these differences had "minimal bearing on the [p]roducts' THC content." All of the products were "made from substantially similar cannabis, with substantially the same cannabinoid active ingredients." In other words, each product was "the same for all purposes relevant to Plaintiffs' claims."

The operative pleading included pictures of the labels on the packages for various strains of Raw Garden Infused Joints. For example, the THC content was a little greater than 35 percent in the "Honey Lemon Cookie" strain and approximately 39 percent in the "Raspberry Cupcake" strain.

In September 2022, an online newsletter that "focused on the nationwide cannabis industry" published an article about "THC potency inflation in the California cannabis market." The newsletter had two laboratories test products from several brands. The products included the " 'Carribean Slurm' " strain of defendant's Raw Garden Infused Joints. The " 'Carribean Slurm' " strain was labeled as having 44 percent THC potency. The testing conducted by one laboratory, however, showed the THC potency "was as low as 25%," which "represent[ed] an underfilling of 44%–nearly half the promised THC potency." (Bold, underscoring & fn. omitted.) The other laboratory's test showed the THC potency was 31 percent.

The online article indicated that its testing was an "imperfect experiment." Regarding the testing it conducted on all the different brands, the article stated that the testing "suggests potency inflation is widespread in California. However, the results are not sufficient to apply to any individual brand, company, product or testing lab. The tests don't account for many variables such as how long product had been on shelves, its temperature

exposure, the potential for testers' bias, human error and a host of other possible corruptions." (Bold & italics omitted.)

In November 2022, plaintiffs' counsel hired an independent laboratory to conduct testing of defendant's "Fire Walker" strain of Raw Garden Infused Joints. Although the packaging stated that there was 637 milligrams of THC in the product, testing showed that the product contained only 431.55 milligrams, which was "an underfilling of 32.25%." (Bold & underscoring omitted.)

Plaintiffs alleged that these underfilling problems showed that defendant's misrepresentations were not limited to a particular batch. Regarding THC levels, the products were "severely underfilled, no matter the strain." Plaintiffs alleged that defendant "leverage[ed]" its "control . . . over the manufacture and testing of its" products to "systematically over-report[] the THC and CBD content," which indicated "a common deceptive practice in the methodology used in the testing for the [p]roducts' labeling." Further, defendant knew that the claims regarding THC content were "false and misleading."

In April 2022, plaintiff Reiner bought the " 'Sunset Cookies' " strain of Raw Garden Infused Joints from a dispensary. In June 2022, plaintiff Ayala purchased the " 'Caribbean Slurm' " strain of Raw Garden Infused Joints from a website. Each plaintiff "paid a substantial price premium due to the false and misleading claims concerning the purported quantity of THC" in the product. Each plaintiff "did not receive the benefit of his bargain because [d]efendant's [Raw Garden Infused Joints] do not contain anywhere near the quantities of THC advertised."

**B. *Civil Action***

Plaintiffs filed the operative second amended putative class action complaint[1] for (1) violation of the Consumers Legal Remedies Act (Civ. Code, § 1750, et seq.), (2) violation of the unfair competition law (Bus. & Prof. Code, § 17200, et seq.), (3) violation of the false advertising law (Bus. & Prof. Code, § 17500, et seq.), (4) breach of express warranty, (5) breach of implied warranty of merchantability, (6) unjust enrichment, and (7) fraud. Plaintiffs alleged that defendant's labeling and marketing of its "Raw Garden Infused Joints" was false and misleading regarding the quantity of THC in the products.

**C. *Defendant's Demurrer***

Defendant demurred to the second amended complaint for failure to state sufficient facts and for uncertainty. (See Civ. Proc. Code, § 430.10, subds. (e) & (f).) Relevant here, regarding the demurrer for failure to state sufficient facts, defendant contended that the testing by the online newsletter and by plaintiffs' counsel was "insufficient" to support plaintiffs' allegations that the labels on the products they purchased were inaccurate. For example, plaintiffs failed to allege sufficient facts showing that the product tested by the online newsletter was "the same as the products that were purchased by [p]laintiffs." Neither plaintiff purchased the product strain tested by their counsel ("Fire Walker"). Further, defendant observed that the package labels pictured in the operative pleading showed that various strains differed in THC content, ranging from approximately 35 percent in "Honey Lemon Cookie" to 44 percent in "Caribbean Slurm." Defendant argued that there was "variation between every strain, batch, and lot depending on the DNA of each strain and the environment in which each product is harvested, dried, and stored . . . , such that no inference can be drawn regarding [p]laintiffs' purchases in April and June of 2022 by way of testing conducted on different products at different times by different entities

---

[1] The record reflects that the trial court previously sustained defendant's demurrer to the first amended complaint for failure to state sufficient facts with leave to amend. The prior pleading, demurrer, and order are not contained in the record on appeal.

using different methods for different purposes." Defendant also contended that plaintiffs had to allege that the testing "used similar amounts of the product and employed a similar methodology as the tests conducted by" defendant.

In support of the demurrer, defendant requested judicial notice of (1) the online newsletter's September 2022 article that was referenced in the operative pleading, and (2) the August 2022 certificates of analysis from the two laboratories that tested defendant's product and that were referenced in the online article. Defendant cited these documents in support of its contentions that: (1) the online newsletter characterized its own testing as an " 'imperfect experiment' with conclusions 'not sufficient to apply to any individual brand, company, product or testing lab' "; and (2) that the two laboratories used different equipment and a different methodology from each other to determine the THC content.

### D. *Opposition to Demurrer*

Plaintiffs contended that they alleged sufficient facts to establish that the products they purchased were inaccurately labeled. Plaintiffs argued that their allegations regarding the laboratory testing of different strains and lots of defendant's product showed that defendant systematically underfilled and overreported the potency of its products. Further, defendant's contentions about the biological variations were "unsupported" assertions requiring the weighing of evidence and were not properly raised on demurrer. Likewise, defendant's attacks on the laboratory testing used by the online newsletter or plaintiffs' counsel went to the sufficiency of the evidence, or to the truth of disputed facts, not to the legal sufficiency of the pleading. Plaintiffs also observed that the certificate of analysis from one of the laboratories used by the online newsletter indicated that the product had been tested "using valid testing methodologies and a quality system as required by state law." In addition, although different methodologies were used by the laboratories, the results from both showed overreporting of THC by defendant. Plaintiffs stated that they did not oppose defendant's request for judicial notice of the online article and the laboratories' certificates of analysis for purposes of the demurrer.

6

**E.  *Reply in Support of Demurrer***

In reply, defendant reiterated that its products had "biological differences between every strain, batch and lot" and that the way each strain was "harvested, dried and stored directly impact[ed] each strain's cannabinoid content."  Defendant also contended that, even assuming the laboratory testing on behalf of the online newsletter was accurate, the testing could not "logically apply to all strains," nor could it apply to a product purchased by one of the plaintiffs months before the testing occurred.

**F.  *Trial Court's Order***

A hearing was held on defendant's demurrer.[2]  By written order, the trial court granted defendant's request for judicial notice of (1) the article by the online newsletter and (2) the certificates of analysis by the two laboratories used by the online newsletter.  The court found that these documents were the proper subjects of judicial notice because the article and test results were referenced in the operative pleading.[3]

The trial court overruled the demurrer for uncertainty, but it sustained the demurrer for failure to state sufficient facts as to each cause of action without leave to amend.  The court determined that plaintiffs failed to allege sufficient facts showing that the products they purchased "actually contained less THC than the amount of THC listed on the product labels," or that they otherwise "sustained any injury or damage."  For example, there were no allegations demonstrating that the products they purchased were the same product or strain tested, or were labeled with the same percentage of THC.  The court observed that the product labels pictured in the pleading indicated that the amount of THC contained in the products "differed from strain to strain."  The court stated that no testing was conducted on the same strain of product purchased by plaintiff Reiner.  In addition, the online newsletter's testing occurred two months after plaintiff Ayala purchased his product and there were no

---

[2] The record on appeal does not contain a record of the oral proceedings.
[3] Plaintiffs did not oppose the request for judicial notice in the trial court, and on appeal they do not challenge the trial court's grant of judicial notice.

allegations regarding when the tested product had been produced or sold. The court observed that the online article stated that "[t]he tests don't account for many variables such as how long product had been on shelves, its temperature exposure, the potential for testers' bias, human error and a host of other possible corruptions." The court concluded that the allegations of the pleading did "not permit a reasonable inference that the specific products purchased by [p]laintiffs also contained less THC than the amount stated on the product labels." A judgment of dismissal was subsequently entered in favor of defendant.

## II. DISCUSSION

Plaintiffs contend that the trial court erred in sustaining defendant's demurrer for failure to state sufficient facts. Plaintiffs argue that the court improperly failed to draw reasonable inference in their favor and raised factual issues not appropriate on demurrer. They contend that they alleged sufficient facts establishing the uniform underfilling of THC in defendant's Raw Garden Infused Joints products.

Defendant contends that plaintiffs failed to allege sufficient facts linking their purchases to the alleged mislabeling, or sufficient facts establishing that any alleged underfilling was uniform. Defendant argues that the trial court properly found plaintiffs' allegations to be unsupported by the test results alleged in the pleading, and that the demurrer was properly sustained.

### A. *Standard of Review*

In reviewing "an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action . . . .' " (*Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.) In performing this review, "we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) We "must assume the truth of the complaint's properly pleaded or implied factual allegations" (*ibid.*), "drawing all reasonable inferences in favor of [the plaintiff's] allegations" (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1170, fn. 16). However, we do not assume the truth of

8

" ' "contentions, deductions or conclusions of fact or law." ' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We also consider matters that may be judicially noticed. (Code Civ. Proc, § 430.30, subd. (a); *Schifando*, at p. 1081.) " ' "[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." [Citation.]' [Citation.]" (*Evans*, *supra*, at p. 6.)

A complaint must contain a "statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).) "The facts that must be included . . . to properly allege a cause of action are referred to as the essential elements of the cause of action. The essential elements are determined by the substantive law that defines the cause of action. [Citation.]" (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1018 (*Foster*).)

Ordinarily, a complaint "is sufficient if it alleges ultimate rather than evidentiary facts." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550.) "Ultimate facts are those 'on which liability depends,' as distinguished from both the evidence proving those facts [citation] and conclusions of law. [Citation.]" (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 643, fn. 2.)[4]

"To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872 (*C.A.*).) Further, " '[i]t is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading. [Citation.] It "admits

_____

[4] The California Supreme Court has observed that distinguishing between an ultimate fact, a conclusion of fact, and a conclusion of law may be difficult. (*In re Estate of Bixler* (1924) 194 Cal. 585, 589 [stating that the boundaries "between conclusions of fact, conclusions of law, and an admixture of the two, are not clearly defined"]; *Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 473 [stating that the "distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree"].)

the truth of all material factual allegations in the complaint . . . ; the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court." ' [Citation.]" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47 (*Quelimane*).) Further, questions of fact are "not amenable to resolution on demurrer" (*Miyahara v. Wells Fargo Bank, N.A.* (2024) 99 Cal.App.5th 687, 703 (*Miyahara*)) unless "there is only one legitimate inference to be drawn from the allegations of the complaint" (*TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1368).

### B. *Analysis*

Plaintiffs' claims in the operative pleading were based on allegations that the "labeling and marketing" of defendant's Raw Garden Infused Joints were "false and misleading." On demurrer, defendant contended that the product testing alleged in the complaint was "insufficient" to support plaintiffs' allegations that the labels on the products they purchased were inaccurate.

In the operative pleading, plaintiffs alleged that the products, "no matter the strain," were "severely underfilled" regarding THC levels. In other words, the quantity of THC in the products was less than that reported by defendant on the product labeling. Plaintiffs alleged that as a result of "the false and misleading claims concerning the purported quantity of THC," they "paid a substantial price premium" and "did not receive the benefit of [the] bargain" because the products did "not contain anywhere near the quantities of THC advertised."

On defendant's demurrer, we are required to assume the truth of these allegations. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) These allegations sufficiently stated injury or damage to plaintiffs as a result of defendant's conduct. Specifically, plaintiffs "paid a substantial price premium" for products that did "not contain anywhere near the quantities of THC advertised."

10

Plaintiffs were not required to allege the "evidentiary fact[s] that might eventually form part of [their] proof." (*C.A.*, *supra*, 53 Cal.4th at p. 872.)  In other words, plaintiffs were not required to allege the evidence that they might rely on to establish that the products were underfilled with less THC than reported on the labeling.  Indeed, "the question of [plaintiffs'] ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court.' "  [Citation.]" (*Quelimane*, *supra*, 19 Cal.4th at p. 47.)  Consequently, defendant's attacks on the sufficiency of the evidence to support plaintiffs' allegations regarding THC underfilling in the products that they purchased—such as whether the relevant product strains were tested at the correct point in time, and whether the laboratories used the correct methodology or otherwise produced valid test results[5]— were not a proper basis for demurrer.

Likewise, defendant's contentions that biological or environmental factors—such as a strain's DNA or the environment in which the product is harvested—may have affected whether the labels were inaccurate regarding THC levels were also not a proper basis for demurring to plaintiffs' pleading.  Neither the allegations in the pleading, nor any matter that was judicially noticed, sufficiently established the effect, if any, of such biological or environmental factors.  (See *Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42 [explaining that on demurrer, a court examines the allegations of the complaint]; *Schifando*, *supra*, 31 Cal.4th at p. 1081 [stating that a court may consider on demurrer matters that are subject to judicial notice].)  Moreover, even assuming that biological or environmental factors affected THC content, defendant did not provide any legal authority establishing that this fact precluded liability for false or misleading labeling.  For example, assuming a strain has a certain DNA or the product is harvested in a certain environment, defendant did not

_____

[5] We also note that, although the September 2022 online article explained that many variables were not accounted for in the laboratory testing and that the results were not sufficient to apply to any individual brand, company, or product, the article nevertheless stated that the testing "suggests potency inflation is widespread in California."

provide any legal authority indicating that this fact would preclude liability for a false or misleading label concerning THC content.

Defendant also contends that the operative pleading itself established that there was variation in THC content between strains. In view of this variation between strains, defendant argues that plaintiffs could not rely on allegations concerning the testing of strains that were different from the strains that they purchased.

However, plaintiffs' pleading included allegations indicating that any difference between strains was not relevant to their false labeling allegations. Plaintiffs alleged that the " 'single source' " for defendant's cannabis was defendant's own farm. All of the products were "made from substantially similar cannabis, with substantially the same cannabinoid active ingredients." Further, the products contained a specific " 'resin,' " or "concentrated THC isolate." Defendant could "control the total amount of added resin in each batch," which gave defendant "control over the [p]roducts' THC and CBD concentrations." The products were advertised as having an "average THC range between '30%-40%.' " Each product's packaging included "a specific purported cannabinoid (*i.e.* THC and CBD) content . . . ." Although the Raw Garden Infused Joints were available in different "strains," meaning "different 'aromas' and 'flavors,' " these differences had "minimal bearing on the [p]roducts' THC content." Further, plaintiffs alleged that the products, "no matter the strain," were "severely underfilled" regarding THC levels.

To the extent defendant disputed these allegations, a demurrer was not the proper vehicle to challenge the allegations. (*Miyahara*, *supra*, 99 Cal.App.5th at p. 703 [stating that questions of fact are "not amenable to resolution on demurrer"].) A court is required to assume the truth of the allegations on demurrer. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) Defendant otherwise failed to demonstrate, based on the pleading and matters judicially noticed, that plaintiffs' false labeling allegations failed to state a claim as a matter of law. (See *Quelimane*, *supra*, 19 Cal.4th at p. 47 [explaining that a demurrer tests "the legal sufficiency of the pleading"].)

12

Defendant contends that testing its product is "akin to testing apples from one harvest and assuming identical fructose content across all apples grown at different times throughout the season." Defendant argues that it would be "unreasonable to infer a farm-wide fructose deficiency based on one apple," and it would "similarly [be] unreasonable to claim systematic THC underfilling across all infused joints" based on the limited testing alleged in plaintiffs' pleading.

We are not persuaded by defendant's comparison to apples. In this case, plaintiffs alleged that defendant had "control" over the THC concentration by changing the amount of resin added to each batch. Further, the products' labels specified the amount of THC in each package. Thus, unlike the variation that a person might expect for fruit grown on a farm, according to plaintiffs' allegations defendant could control the THC content in its products and measured the precise amount as reflected on the products' labels.

In sum, we determine that plaintiffs alleged sufficient facts establishing that the labels on the products they purchased were inaccurate regarding the quantity of THC. Accordingly, defendant's demurrer for failure to state sufficient facts should have been overruled.

### III. DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order sustaining defendant Central Coast Agriculture, Inc.'s demurrer for failure to state sufficient facts and to enter a new order overruling the demurrer to the entire second amended putative class action complaint. Plaintiffs Christian Ayala and Emmett Reiner shall recover their costs on appeal.

13

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.




_____
Bromberg, J.




H052789 Ayala et al. v. Central Coast Agriculture, Inc.