[Civ. No. 14827.  Second Dist., Div. Three.  June 25, 1945.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., Respondent, v. GEORGE D. CRAWFORD, Appellant.

George Gardner for Appellant.

John H. Miller and Austin & Austin for Respondent.

SHINN, J.—On August 31, 1943, Charles L. Martin conveyed to defendant Crawford two residential properties located in Los Angeles, of the value of $3,000 each. Within two months thereafter Mr. Martin died and his executor brought this action for recovery of the property, alleging that the grantor was mentally incompetent to make the deed and that it had been procured by the undue influence of Crawford. Upon the trial the court found all the allegations of the complaint to be true and rendered judgment setting aside the deed and awarding plaintiff the amount of the rents collected by defendant after the death of Mr. Martin. Defendant appeals.

There were additional findings to the effect that the grantor did not intend to convey any title, except one to take effect upon his death, that there had been no delivery of the deed, and a finding which would indicate that the court did not intend to find that Mr. Martin was incompetent, but it is not necessary to consider the correctness of these findings. The case does not turn upon these points.

It was alleged in the complaint, and found to be true, that a confidential relationship existed between decedent and defendant, that decedent was aged and infirm, unable to withstand the importunities of defendant, and that the latter made use of the confidential relationship to persuade decedent to execute the deed. The decisive question is whether there was evidence to sustain this finding. There was no direct evidence of undue influence exercised by defendant, or anyone in his behalf. There was, however, a presumption of undue influence if defendant stood in the relationship of a trustee. One who voluntarily assumes a relation of personal confidence is a trustee (Civ. Code, § 2219), and every transac-

tion with his beneficiary during the existence of the trust, by which he obtains any advantage over the beneficiary, is presumed to have been entered into without sufficient consideration and under undue influence (Civ. Code, § 2235). It is conceded by defendant that he gave no consideration for the deed. Mr. Martin was 90 years of age; he was taken ill on August 25, 1943, six days before the execution of the deed. The physician who attended him on the evening of the 25th described his condition as follows: ''While I found that he had—— he was just worn out, his heart was just worn out, he had a myocardial condition there and he was just an old man . . . he said he was awful weak.'' He grew weaker steadily until he died. There was also testimony that his memory and other mental powers had failed perceptibly prior to his last illness. He was saving to the extent of being penurious, lived on poor and inexpensive food, wore old clothes which he mended and patched himself, and habitually remained standing while eating, for the reason, as he stated, that that was the way the animals ate. One of his neighbors urged him to eat more nourishing food and he said, ''I haven't been in the habit of eating much—I chew my food as long as I can chew it, because when I swallow my food it is gone and that is all the good it does you.'' Neighbors frequently took food to him during the last several years of his life and were very attentive to him, and one of them, Mrs. Parker, was especially attentive during the last nine months or a year, going to his house several times a day even though he was not actually sick. She cared for him in his last illness and Mr. Martin paid her $200 for her services, but he did not make any gifts to his friends, other than defendant. He owned eight houses, three upon one lot, other than the one in which he lived, and they were worth in the neighborhood of $40,000. His houses were rented and he attended to the collection of his rentals. He had four adult children residing in Texas and grandchildren by a deceased child. His wife had been dead since 1941 and he lived alone. Defendant Crawford was in the real estate and insurance business and had been acquainted with decedent for some eight years; he handled the insurance on the several properties. He saw Mr. Martin with great frequency, often drove him to and from Martin's properties, and he testified that he was occasionally consulted by Martin in business matters. He

also testified that during the last two years, by prearrangement, Martin had called him by telephone almost every day. No explanation was given as to the occasion for these frequent conversations, and the court could have inferred, with good reason, that they were of a business nature. Ownership of eight rented houses undoubtedly demanded much attention to detail and a considerable amount of negotiation with tenants. It is not likely that it was arranged that Martin should call defendant daily for the purpose of passing the time of day or engaging in purely social conversation, and it is reasonable to believe that matters pertaining to Martin's business were discussed upon the frequent occasions when defendant drove him to and from his several houses. He did not discuss his business affairs with his neighbors and other friends. When Mr. Martin's wife died, defendant took charge of the funeral and thereafter received from Martin the sum of $25, and a letter promising him that he would be remembered further. Mr. Martin made a will in February, 1942, by which he left defendant $300 and the remainder of his property to his children. He was on good terms with his children and corresponded with his son Claude once or twice a week up until the time of his last illness. The will was olographic and defendant stated to Claude Martin, according to the latter's testimony, that it had been written in his, defendant's, office; defendant denied this upon the stand, but testified that decedent had given him the will and asked him to make several copies of it and that he did so. When Martin became ill a physician was engaged through defendant's office, defendant being out of the city, and upon defendant's return he took entire charge of Martin during his illness, engaged a neighbor to attend and nurse him, and left instructions that he was to be called, even if he was out of the city on vacation, in the event he should be needed. He told the son Claude that he knew more about the father than either Claude or Mr. Brown, Martin's banker friend. Claude, who was 66 years of age, arrived from Texas less than a month after his father was taken ill and cared for him until his death a month later. During that time defendant called at the house from 17 to 19 times. On the 11th of September, defendant said to Mr. Martin, in the presence of a neighbor, that "he would be there the next day and take care of or fix up all of his business for him."

There was little in the characteristics of this feeble and penurious old gentleman which would have rendered his companionship enjoyable to a man engaged in active business, as defendant was. And if the trial court had believed that Martin's ownership of a considerable amount of property was at the bottom of defendant's interest in him, we could not say that this would have been an unreasonable deduction. The evidence and the reasonable inferences therefrom amply support the finding that there was a confidential relationship.

Defendant's next contention is that the evidence conclusively proved that no undue influence was exerted to obtain the deed. His account of the transaction, if believed, would show that Mr. Martin conceived the idea of making a gift of the property and that he was not subjected to outside influence. It is the contention of defendant that his testimony was not contradicted, that it was not inherently improbable, and that the court was bound to accept it. Although there was no directly contradictory evidence, defendant's testimony did meet opposition, inasmuch as the evidence was such as to give rise to the presumption of undue influence. Having obtained $6,000 worth of property without consideration, defendant could not sustain the transaction except by clear and convincing evidence that there had been no abuse of the confidence reposed in him by the decedent, and when he placed his dependence on the testimony of witnesses to overcome the presumption of the use of undue influence, such testimony had to be clear, positive, uncontradicted, and of such a nature that it could not rationally be disbelieved. (*Hicks* v. *Reis* (1943), 21 Cal.2d 654, 661 [134 P.2d 788]; *Blank* v. *Coffin* (1942), 20 Cal.2d 457, 461 [126 P.2d 868].) "It is within the province of the trial court to determine what weight and credit shall be given to the testimony of any witness, and this court may not control the conclusion or finding of the superior court denying credence to the testimony unless it appears that there is nothing which at all impairs its accuracy. (*Blanc* v. *Connor,* 167 Cal. 719-722 [141 P. 217]; *Davis* v. *Judson,* 159 Cal. 121-128 [113 P. 147].)" (*Cox* v. *Schnerr* (1916), 172 Cal. 371, at 379 [156 P. 509].)

Defendant's testimony was that Mr. Martin had sent for him on the day the deed was executed, told him that he

wanted to give him, Crawford, the house he was living in, and gave him the choice of either of two other properties; that Martin had previously asked defendant how he could make a deed and retain the use of his property during his lifetime and that he, defendant, had advised him he could deed the property, reserving a life estate; that on the day the deed was made, when Martin mentioned it, he, defendant, asked him if he wished to reserve a life estate, and that Martin said that he did. not; that he knew Crawford would not put him out of the home if he lived to be 100. He testified that he returned to his office, prepared the deed, returned to Martin's home with a Mrs. Schulte, who was the notary and his office assistant; that the deed was signed and acknowledged to Mrs. Schulte but that it was not recorded until several days after Martin's death. He admitted that he had not mentioned the deed to Martin's son or daughter until after Mr. Martin's death, and had not answered their questions concerning the will, although he saw them frequently. Mrs. Schulte was not called as a witness and no explanation was given as to defendant's failure to call her. She was the only living person, other than defendant, who knew of the circumstances under which the deed was executed, the only one who could have corroborated defendant's testimony as to the conversation that was had, if it had occurred as defendant testified. Defendant testified that Martin had a life estate in the home property, which had stood in the name of his wife, and that he acquired the remainder from the wife's estate for the joint benefit of himself and defendant, saying that he intended defendant to have the property after he was gone. There was no evidence that Mr. Martin ever expressed this intention to anyone else nor of facts which would have furnished a reason for such a gift. So far as the evidence disclosed, defendant may have represented to Martin that his services had been of great value to the latter and that he deserved to be compensated therefor in a substantial manner, or he may have made other representations equally as persuasive. There was no testimony of any disinterested witness as to the subject of their innumerable conversations. To be sure, there is no evidence that Martin was thus influenced, but the burden of proof upon that issue did not rest upon plaintiff; it rested upon the defendant. It was necessary for him to prove affirmatively that Martin's act was entirely voluntary, uninfluenced

by his relationship with defendant or by adverse pressure of any sort. In weighing defendant's evidence the court no doubt was impressed by the fact that defendant failed to call as a witness the only disinterested person who could have testified as to the conversations with reference to the deed, and that he concealed the fact that the deed had been made from Mr. Martin's two children who attended him during his last illness, and declined to answer their questions with reference to Mr. Martin's will, other than to say that they had been remembered. This concealment, during the entire time when the children could have learned of Mr. Martin's wishes and his motives, tends to indicate that defendant felt so insecure in his position as a voluntary grantee that he did not dare to risk any inquiry, while the old man lived, as to the conditions surrounding the giving of the deed. Mr. Martin had an attorney, Mr. Miller, and also frequently advised with Mr. Brown at the bank, but he consulted with neither of them about making the deed and defendant, although he knew Mr. Martin's relations with them, made no mention to them of the deed until after Martin's death. It was not shown that Mr. Martin ever mentioned the deed to any of the members of his family or his friends or that he had any independent advice concerning it. The evidence as a whole furnished no satisfactory reason why Mr. Martin should have placed defendant upon a basis of substantial equality with his children, all of whom enjoyed his natural affection. Undoubtedly there was a feeling of obligation, dictated by a relationship which went considerably beyond mere friendship. For some reason Mr. Martin increased his bounty to defendant from $300 at the time the will was made, to $6,000, a year and a half later. The evidence left his motive in so doing a matter of speculation.

The findings upon the issue of undue influence are supported by the evidence, they are sufficient to support the judgment, and it is unnecessary to discuss other points which are relied upon by respondent.

The judgment is affirmed.

Desmond, P. J., and Fox, J. pro tem., concurred.