[Civ. No. 3919.   Fourth  Dist.   Jan. 19, 1949.]

ANNIE W. WEBB, Respondent, v. C. B. SAUNDERS et al.,
Appellants.

William H. Wylie, Stickney & Stickney and Edward Strop for Appellants.

Price, Nottbusch, Cory & Schwartz for Respondent.

MUSSELL, J.—In this action to set aside a deed, judgment for plaintiff was reversed with directions to permit plaintiff to amend her complaint by alleging the confidential relationship existing between plaintiff and defendants. It was stipulated that the testimony taken and received at the second trial was identical with that of the first and the facts are fully set forth in the opinion of this court in *Webb* v. *Saunders,* 79 Cal. App.2d 863 [181 P.2d 43].

Plaintiff, a widow, 85 years of age, lived next door to defendants in the city of San Diego. It is alleged in her amended complaint that on or about December 27, 1943, defendant C. B. Saunders procured, and induced plaintiff to execute and deliver a deed of the property described therein to C. B. Saunders and Myrtle Saunders, his wife; that at the time of

the execution of the deed, plaintiff was old and infirm and in a weakened physical condition and about to undergo a major operation involving a leg amputation; that she was then in a weakened mental condition and incapable of exercising sound business judgment; that there then existed between plaintiff and defendants an intimate and confidential relationship, and defendants, taking advantage of plaintiff's physical and mental condition, and fraudulently taking advantage of the said intimate and confidential relationship, procured plaintiff's signature to the deed; that there was no consideration given for its execution. The court found that all of the allegations of the amended complaint were true and ordered the cancellation of the deed.

There is substantial evidence in the record to support the findings of the trial court. There was testimony to the effect that defendants performed neighborly acts for plaintiff over a considerable period of time and gained her confidence to the extent that she entrusted Mr. Saunders with approximately $2,500 of her money, which he kept in his personal bank account; that Mr. Saunders borrowed $2,000 from plaintiff to make a down payment on a house next door to plaintiff's house in order that they, defendants, at plaintiff's request, could be close to her. Mr. Saunders took plaintiff to the county hospital for medical attention and surgery by which her left leg was amputated on December 30, 1943. Mrs. Webb, while in the hospital, on December 27, 1943, executed a purported grant deed of her home to defendants, reserving a life estate therein. ''A valuable consideration'' was recited in the deed and no internal revenue stamps were attached.

Mrs. Webb testified that she first met defendant Saunders when he rented one of her bungalows; that she trusted him implicitly; that she never intended to transfer the real property to defendants and had no recollection of having signed a deed in the hospital; that during her first week in the hospital she remembered very little of what transpired because the doctors kept her under the influence of a drug the greater part of the time to alleviate the pain; that during the first month she was at the hospital her mind was ''kind of in a daze''; that the first time she knew about the signing of the deed was in 1945, after she had placed her home on the market for sale.

Defendant Saunders testified that he secured the services of a Mr. Ryan to draw up the deed and presented it to plain-

tiff for signature; that he and his wife had been visiting plaintiff frequently in the hospital; that he knew that Mrs. Webb might not recover from the amputation operation; that subsequent to the execution of the deed, she directed him to contact an attorney to prepare a will, which he did, and a will was executed in the presence of the attorney and a doctor; that on January 15, 1944, he paid plaintiff's bills at the hospital at her request, with her money, and took her to her home; that for about two months thereafter his wife cared for her and received $100 for her services; that one day he was taking plaintiff to see the doctor and she remarked that she was under the impression that she had given defendants her property in a will and also that she found out she had given them a deed to her place and that she wanted it back; that he told her he didn't want anything that belonged to her and that she could do as she wished about it.

As was said in *Webb* v. *Saunders, supra,* at page 869: "Gifts or benefits from a principal to one occupying a fiduciary or confidential relation to him, while not absolutely void, are presumptively void, and persons standing in such a relation to others cannot entitle themselves to hold benefits which those others have conferred upon them, unless they can show to the satisfaction of the court that the person by whom the benefits have been conferred had independent advice in conferring them and that the dealings were fair. Such transactions will be set aside upon the discovery of the least fraud and the burden is upon the party benefited to show that the confidence was not abused, by proving that the other party acted, not upon any reliance or confidence placed in the former, but with full knowledge of the facts, and entire understanding of the effect of the transaction." (Citing 4 Cal.Jur. § 16, p. 778.)

There is nothing in the record to indicate that Mrs. Webb had such independent advice and there was evidence indicating that she did not fully understand the nature of the transaction concerning the execution of the deed and in fact had no recollection of it.

It is a general rule that equity regards and treats the relation of principal and agent in the same manner and with nearly the same strictness as that of trustee and beneficiary. (Civ. Code, § 2322; 1 Cal.Jur. p. 788, § 77; *Webb* v. *Saunders, supra,* p. 870.) The law requires perfect good faith on the part of agents, not only in form, but in substance, and

not only from agents receiving compensation but also from gratuitous agents (1 Cal.Jur. § 79, p. 790), in which case the burden is upon the grantee to show that the deed was made freely and voluntarily, and with full knowledge of all the facts and with perfect understanding of the effect of the transfer. (*Campbell* v. *Genshlea,* 180 Cal. 213 [180 P. 336]; *Calmon* v. *Sarraille,* 142 Cal. 638 [76 P. 486]; *Webb* v. *Saunders, supra,* p. 870.)

In *Bank of America* v. *Crawford,* 69 Cal.App.2d 697 [160 P.2d 169], an action to recover property conveyed, without consideration, to the defendant, by a 90-year-old man, it was held that while there was no direct evidence of undue influence exercised by the defendant, where it appeared that the decedent was taken ill six days before the execution of the deed; that thereafter he grew steadily weaker until he died; that he was saving to the extent of being penurious, and lived on poor and inexpensive food; that the defendant was in the real estate and insurance business and handled decedent's insurance on several properties; that he saw deceased with great frequency and was consulted by him in business matters; that the defendant took entire charge of decedent during his last illness, the evidence was sufficient to support the finding that a confidential relationship existed between decedent and the defendant and the conveyance was set aside.

■ It is argued by defendants here that since the evidence was identical at both trials, upon reversal of the judgment the court at the second trial is controlled in its decision by the law of the case as promulgated by the reviewing court. We find no merit in this contention. The judgment on the former appeal was reversed in its entirety, the complaint was amended and appropriate and consistent findings made on the issues there raised. The doctrine of the law of the case (in this state) does not extend to the facts or to points of law which might have been but were not presented and determined on a prior appeal. (*Steelduct Co.* v. *Henger-Seltzer Co.,* 26 Cal. 2d 634, 644 [160 P.2d 804].) ■ The effect of the reversal was to remand the cause for a new trial of all the issues raised by the pleadings. (*Little* v. *Superior Court,* 74 Cal. 219 [15 P. 731]; 2 Cal.Jur. § 628, p. 1057.)

■ It is next contended that the amended complaint does not state a cause of action. The allegations that defendants procured and induced plaintiff to execute and deliver the deed at a time when she was old and infirm and in a weakened

condition mentally and physically and incapable of exercising sound business judgment; that a confidential and intimate relationship then existed between the parties; that defendants, taking advantage of plaintiff's weakened physical and mental condition and of the intimate and confidential relationship procured plaintiff's signature to the deed, together with the allegation that there was no consideration for the deed, state a cause of action for cancellation of the deed. (*Zakaessian* v. *Zakaessian,* 70 Cal.App.2d 721, 725 [161 P.2d 677]; *Keele* v. *Clouser,* 101 Cal.App. 500, 501 [281 P. 1073].)

We find no merit in defendants' contention that ''The appellate court, sitting as a court of review, has no jurisdiction to review errors prejudicial to a respondent who has not appealed.'' The judgment of reversal of the first action has become final. The effect of the directions in the reversal was to leave the trial court free to permit the filing of additional pleadings and to retry the case upon the issues framed. (*Lissner* v. *Superior Court,* 23 Cal.2d 711, 717 [146 P.2d 232].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied February 15, 1949, and appellants' petition for a hearing by the Supreme Court was denied March 17, 1949.