[Civ. No. 14857.   First Dist., Div. Two.   Feb. 13, 1952.]

DOROTHY O'NEILL, Appellant, v. ROBERT M. DENNIS, Respondent.

Paolini & Paolini and Fahey, Castagnetto & Gallen for Appellant.

Roger Anderson for Respondent.

JONES, J. pro tem.—The appeal in this case is from a judgment quieting respondent's title to an improved lot on Rayburn Street in San Francisco.

On April 1, 1949 appellant executed to him a deed of this lot reserving a life estate in herself. The deed was delivered on April 1, and on April 8, respondent had it recorded and has retained it ever since. No consideration was given, making the deed a gift of the remainder interest in the property to the respondent.

The complaint is in two counts. The first count alleges fraud and seeks to have the deed set aside on that ground. The second count alleges title in appellant and is to quiet title. The trial court found against the claim of fraud and entered a judgment quieting title in the respondent subject to a life estate in appellant. It is from this judgment that she has appealed.

The appellant was in her 80th year when the deed was given. She made her home on the property as she had since 1906. Her health was poor and she was unable to hear except through the medium of a hearing aid. She had no near relatives except a sister, Mrs. Brickdale, who lived in another part of the

city, and by whom the respondent, Dennis, was employed. The old age pension was the only income which Mrs. O'Neill, the appellant, enjoyed. The respondent was a frequent visitor at her house, did numerous small things for her, and looked after the payment of her taxes. He testified that he had the deed in question prepared by a scrivener whom he selected and that he procured the notary who took the acknowledgment. He also testified that he secured the description of the lot set out in the deed from a title company.

When a grantee in a deed occupies a relation of trust and confidence toward the grantor, as the respondent did here (*Bank of America* v. *Crawford,* 69 Cal.App.2d 697 [160 P.2d 169]), and is active in the preparation of the deed and stands to profit unduly by the transaction the burden is cast upon him to show that the grantor acted with a full and complete knowledge of the facts and with complete understanding of the transaction and not upon any reliance or confidence placed in the grantee.

In *Webb* v. *Saunders,* 89 Cal.App.2d 732, 735 [201 P.2d 816], it is said that ''Gifts or benefits from a principal to one occupying a fiduciary or confidential relation to him, while not absolutely void, are presumptively void'' and ''Such transactions will be set aside upon the discovery of the least fraud *and the burden* is upon the party benefited to show that the confidence was not abused, by proving that the other party acted, not upon any reliance or confidence placed in the former, but with full knowledge of the facts, and entire understanding of the effect of the transaction.'' (Italics added.)

Where the burden shifts to the defendant to show fairness and good faith in the transaction as it does under the facts in this case, it is nevertheless incumbent upon the appellant in order to prevail upon the appeal to show that no credible evidence was produced from which the reasonable inference might be drawn that the grantor acted voluntarily and with full knowledge of the facts and a complete understanding of the effect of the transaction. In *Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550], the court said: ''As ground for reversal defendants urge the insufficiency of the evidence to sustain the findings that the realty involved was their community property, and not the separate property of Mrs. Mitchell. Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings. As was stated in the oft-cited case of *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, at page 429 [45 P.2d 183] '. . . the

power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' which will support the findings, and when 'two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' ''

The testimony of the respondent is that when Mrs. O'Neill first mentioned making the deed in February, 1948, she said to him: ''You have been very kind to me any time I have asked you to do anything; you was always right there to help me and you never turned me down at any time or place, and you brought my sister any time I wanted her when I didn't feel good,'' and she said, ''You are the man I want to have the property.'' He also testified that Mrs. O'Neill had talked the matter over with him several times in the presence of her sister and had said that she would give him the property because he had been ''good to her and kind to her and her sister wouldn't want it''; and that about ten days before the deed was made ''she said she was sick, for me to go and get a notary and have it done.'' With respect to the actual execution of the deed he testified: ''She was asked and she read it over, if she knew and thoroughly understood it and she says, 'I do' and she was asked, 'What do you want to do with this' and she said, 'I want to give it to Mr. Dennis.' ''

Mrs. Helen Schrick, the notary who took the acknowledgment to the deed, was called as a witness by the respondent. She testified that she had not known the respondent, Dennis, until he came into her office to enlist her services for Mrs. O'Neill. Mrs. Schrick and a Mr. Sam McKee, drove to the O'Neill home where they were introduced to Mrs. O'Neill by Dennis. At that time Dennis had the deed. As Mrs. Schrick narrated the events, ''She, (Mrs. O'Neill) took the deed in her hand. She had the deed and she looked at it, and she even remarked, 'I wonder if this is the right description.' '' This witness testified that ''Mr. McKee asked her (Mrs. O'Neill) if she realized what she was doing and it was a deed and she would have a life estate in that deed, and she said she understood it. . . . He asked her if she knew what she was doing and she said that was who (Dennis) she wanted to give it to.''

McKee, who had been in the real estate and insurance business in San Francisco since 1914, testified that he had never known Dennis prior to April 1, 1949; that on this date, ''Mr. Dennis came into my office with a deed of gift already prepared

and told me he had to get a notary public. Mrs. Schrick, who is a notary public in my office, was present and I reminded him that he must have a notary as well as a witness. . . . I drove Mrs. Schrick to Rayburn Street in my car, and we met Mr. Dennis in front of the house and went in together and met Mrs. O'Neill. It was quite apparent that Mrs. O'Neill was deaf so we had to talk loudly and she asked to change the batteries in her hearing aid, and I proceeded to explain to her who I was also why Mrs. Schrick was present and I explained everything in that instrument to Mrs. O'Neill. If I wasn't satisfied that she understood everything in the deed of gift I wouldn't have proceeded. . . . I explained the contents of the instrument, including the names, and I wouldn't say now that I read the description in that particular deed of gift, but I invariably do.''

The witness Malatesta, testified that in February, 1948, he heard Mrs. O'Neill say she was going to leave the property to Dennis.

The only contradictory testimony is that given by Mrs. O'Neill. Substantially she testified that the proceeding was confusing to her; that she did not read the deed nor was it read to her; and that she had no intention of disposing of her property while she was living. ■ The function of this court is to determine if there is any evidence of a substantial character either direct or circumstantial which tends to support the judgment, and if there is, we may not overthrow it. (*Laherty* v. *Connell*, 64 Cal.App.2d 355 [148 P.2d 895]; *Azevedo* v. *Leavitt*, 76 Cal.App.2d 321 [172 P.2d 704].)

■ The evidence produced by the defendant with reference to volition on the part of the grantor and knowledge and understanding on her part of the facts and the effect of the transaction stands almost uncontradicted and is amply sufficient to sustain the burden cast upon him. It overcomes the presumption of fraud and undue influence arising out of the confidential relationship.

■ Appellant makes the point that she was entirely without the benefit of independent advice in the transaction and urges reversal of the judgment on this ground. Lack of independent advice by the grantor is not of and in itself a ground for vitiating a deed under such circumstances as we have here presented, but is a fact to be weighed by the trial court in determining whether the grantor acted voluntarily and with a complete understanding of the transaction. (*Brown* v. *Ca-*

*nadian Indus. Alcohol Co.,* 209 Cal. 596 [289 P. 613] ; *Laherty v. Connell, supra; Azevedo* v. *Levitt, supra.*)

■ The evidence of actual delivery coupled with the fact that respondent recorded and retained the deed amply supports the finding of title in him. (9 Cal.Jur. p. 185, § 74.)

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.