Filed 2/5/16  Niman v. Lee CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| CLIFFORD P. NIMAN III, | C068683 |
| Plaintiff and Appellant, | (Super. Ct. Nos. P14770 & P14839) |
| v. | |
| BARBARA LEE, as Trustee, etc., | |
| Defendant and Respondent. | |

This case involves the estate of two decedents, Twila Vollmer, and her husband Vere Vollmer.[1]  The parties on appeal are Twila's two sons by her first marriage, Clifford and Frederick Niman.[2]  The primary assets involved in this appeal are two parcels of real property, which will be referred to as Red Dog Road and the Farm.

---

[1] We refer to the parties by their first names to avoid confusion and intend no disrespect.

[2] Respondent Frederick Niman passed away after the case was fully briefed.  The court was notified in June, 2014 that a motion for substitution of respondent would be filed once a successor had been identified and an order from the probate court appointing an

1

Clifford's petition alleged that Vere lacked testamentary capacity when he executed an amendment to his trust that left his estate to Twila, and if she predeceased him to Frederick. Clifford claimed Frederick unduly influenced Vere's execution of the trust amendment. In a separate petition, Clifford alleged that Frederick unduly influenced Twila to convey two parcels of real property (Red Dog Road & the Farm) out of her trust to Frederick. The two actions were consolidated for discovery and trial.

The trial court found that Vere was competent and was not induced by any act of undue influence on the part of Frederick when he executed the third amendment to his trust. The trial court also found that when Twila executed deeds to Frederick removing the subject properties from the assets of her trust, she did so of her own free will and without any undue influence or fraud on the part of Frederick. The trial court denied the petition to remove Frederick as the cotrustee of the Twila Vollmer trust.

Clifford's appeal consists primarily of an invitation for us to reweigh the evidence, which we decline to do. We will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Vere and Twila were married in 1987. Vere executed a revocable trust in 1996. The trust instrument left nothing to Clifford or Frederick. However, Clifford and Frederick would share Twila's interest in Vere's estate, along with Twila's grandson, Frederick Niman II in the event Twila predeceased Vere. Vere's share of his and Twila's residence (Valley View) was to go to Twila unless she predeceased Vere, in which case it was to be divided with the rest of the estate.

administrator for respondent's estate had been obtained. On August 25, 2015, a stipulation was filed substituting Barbara Lee as respondent. On September 8, 2015, the court ordered Barbara Lee be substituted as a party in place of Frederick Niman. We shall nevertheless refer to respondent as Frederick Niman. Frederick cross-complained below and filed a notice of appeal from the judgment against him on the cross-complaint. However, he raises no issues on appeal as an appellant with respect to the judgment on the cross-complaint.

2

Three years later, in 1999, Vere executed a first amendment to his trust. The amendment left 90 percent of Vere's estate to Twila, with her two sons dividing Twila's share equally if she predeceased Vere. Valley View was again distributed to Twila provided she survived Vere, but if she predeceased him, it was to be distributed equally to Clifford and Frederick.

In 2001, Vere executed a second amendment to his trust. The second amendment made no changes that were relevant to the parties here.

On September 22, 2005, Vere executed a third amendment to his trust. This time, Vere's entire estate was given to Twila, but if she predeceased Vere, the entire estate was to be distributed to Frederick. Vere's will, executed at the same time, reiterated that his entire estate would go to Twila, and if she predeceased him, to Frederick. It also named Twila as executor of the will, and if she was unable to act, Frederick would be the executor. The third amendment to the trust in the record does not include a schedule of assets to be transferred to the trust, but the original Vere Vollmer trust assets included Vere's share of the Valley View property, unspecified bank and savings accounts, and unspecified stocks and other securities.

In 2005, Twila executed a revocable trust providing that upon her death her interest in Valley View would go to Frederick, subject to Vere's right to reside in the residence during his lifetime. The remainder of the trust estate, which consisted of: (1) 11199 Red Dog Road, assessor's parcel No. 36-290-19-000 (Red Dog Road); (2) 15676 State Highway 49, assessor's parcel No. 25-220-06-000 (the Farm); (3) unspecified bank accounts; and (4) unspecified securities, would go to Frederick.

On March 29, 2007, Twila executed a first amendment to her trust. The amendment provided again that Vere had the right to live in Valley View for the remainder of his lifetime, but otherwise provided that her estate would be distributed equally to Clifford and Frederick.

On May 10, 2007, Twila transferred Red Dog Road and the Farm to Frederick. She later conveyed "correctory" deeds for these properties changing the grantor from Twila Vollmer, trustee and Twila Vollmer as her sole and separate property to "Twila D. Vollmer, as Trustee of the Twila D. Vollmer 2005 Trust dated December 6, 2005."

Twila predeceased Vere. Twila died September 20, 2007. Vere died on August 29, 2008.

The challenged actions relevant to this appeal are Vere's third amended trust and Twila's deed to Frederick of the Red Dog Road and Farm properties. Clifford claimed that when Twila deeded the properties out of the trust to Frederick in 2007 shortly after changing her trust to distribute the property equally, she was acting under Frederick's undue influence, and that the deeds were fraudulent. He claimed that when Vere executed his third amendment to the trust, he was acting under the undue influence of Frederick, and that Vere had no capacity to make the change because of his dementia.

Frederick claimed he was the only one who had taken care of Twila and Vere while Clifford lived in southern California, and that Clifford suddenly became interested in his mother and Vere in 2007, at which time he arrived in Grass Valley and induced Twila to change her trust to benefit her sons equally. Frederick argued Twila had always assured him that he would get the Red Dog Road and the Farm properties, and that Clifford was aware of this and was in agreement. Frederick argued Twila did not realize when she changed her trust in 2007 that she was dividing the properties equally between her sons, and that, with Clifford's agreement, she corrected the mistake by deeding the properties out of the trust to Frederick. Frederick argued that the physician's examination

4

of Vere in 2005 which concluded Vere had dementia was flawed, and that Vere had testamentary capacity when he amended his trust in 2005.[3]

The trial court found that when Vere executed the third amendment to his trust in 2005, he was presumed competent, and that this presumption of competency was not rebutted. The court found that Vere's execution of the third amendment was not induced by any act of undue influence on the part of Frederick. The trial court found Twila was presumed competent when she deeded the two properties out of the trust to Frederick, and that her actions were without any undue influence or fraud.

Accordingly, the trial court denied Clifford's petition to reclaim title to the Farm and Red Dog Road properties, to remove Frederick as the cotrustee of Twila's trust, and for an accounting.

DISCUSSION

I

Substantial Evidence of Vere's Capacity

Clifford argues he presented substantial evidence that Vere lacked the capacity in September 2005 to execute the third amendment to his trust. He points to the testimony of Dr. Chris Claydon, Vere's doctor, who performed a mental examination in May 2005 concluded Vere had moderate dementia, and guessed he had had it for about two years. Clifford also emphasizes the testimony of Vere's attorney, Augustine Tassone, who stated Vere was not exactly sure about what changes he wanted to make during his appointment on September 16, 2005.

Clifford misunderstands the nature of substantial evidence review on appeal. The question on appeal is not whether there is substantial evidence to support the appellant's

---

[3] Frederick also filed a petition seeking from Clifford and his wife the return of $132,431.26 that had been in an account owned by Twila, and from Lydia Velenosi the return of Twila's jewelry. The trial court denied these requests.

claim, but whether there is substantial evidence to support the judgment. "In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) We accept as true all the evidence favorable to the respondent and discard the evidence that is unfavorable to the respondent. (*Estate of Teel* (1944) 25 Cal.2d 520, 527.) If that evidence is sufficient as a matter of law, the judgment must be affirmed. (*Ibid*.)

Probate Code section 810 establishes a rebuttable presumption affecting the burden of proof that a person has the capacity to execute a trust or will. Because Clifford was challenging Vere's competency to execute the third trust amendment, he had the burden of proving Vere was incompetent. The trial court found that Clifford did not rebut the presumption of competency.

" '[The] determinants of testamentary capacity are whether the individual "has sufficient mental capacity to be able to understand the nature of the act he is doing, and to understand and recollect the nature and situation of his property and to remember, and understand his relations to, the persons who have claims upon his bounty and whose interests are affected by the provisions of the instrument." ' (*Estate of Fritschi* (1963) 60 Cal.2d 367, 372, quoting *Estate of Smith* (1926) 200 Cal. 152, 158; see Prob.Code, § 6100.5.) Testamentary capacity must be determined at the time of execution of the will. [Citation.] Incompetency on a given day may, however, be established by proof of

incompetency at prior and subsequent times. [Citation.]" (*Estate of Mann* (1986) 184 Cal.App.3d 593, 602.)

Tassone testified he had been Vere's attorney since 1973. Tassone had prepared a number of wills for Vere, prepared deeds and handled the sale of property, handled litigation matters, and handled the estate of his first wife. Between 1999 and 2005, Vere eliminated several beneficiaries from his will and trust. When Vere came to Tassone's office to sign the third amendment to the trust, there was not "anything particular that stood out that would raise any kind of flags." Vere "acted pretty much like he always acted." Vere appeared to know the purpose of the visit. He read the trust amendment, and affirmed that he understood Tassone's verbal summary of the document. Tassone thought he understood everything. It was clear to Tassone that Vere understood the persons who would receive a disposition under his trust. He understood the act he was performing.

Also, Frederick presented the expert testimony of Dr. Alfredo Amezaga, a clinical psychologist who was an expert in forensic geriatric psychology. Dr. Amezaga reviewed the mental status exams Dr. Claydon gave Vere. He testified that the Mini-Mental Status Exam (MMSE) given to Vere was not a diagnostic tool for dementia, but merely a superficial screening device indicating some form of cognitive dysfunction that could be attributable to a host of different causes, including depression and medication. The MMSE is extremely subjective and extremely variable. After reviewing the results of the MMSE given to Vere, Dr. Amezaga concluded that it was an invalid assessment and that "no reasonable empirical-based decisions can be made about the cognitive functioning of the decedent who received this examination."

This evidence was sufficient for the court to conclude that Vere understood the nature of the act he was doing, and understood the nature and situation of his property and remembered, and understood his relations to, the persons who had claims upon his bounty and whose interests were affected by the provisions of the instrument. The

7

evidence was sufficient for the court to conclude that Clifford did not rebut the presumption of Vere's capacity to execute the third amendment to his trust.

## II

## Substantial Evidence of No Undue Influence

Clifford argues the trial court erred in not recognizing the presumption that Vere's third trust amendment was the product of undue influence. He relies on former Probate Code section 21350, which declared in part that an instrument making a donative transfer was invalid where: (1) the transfer was to a person with a fiduciary relationship to the transferor who transcribed the instrument or caused it to be transcribed; or (2) the transfer was to a care custodian of a dependent adult who was the transferor. (Former Prob. Code, § 21350, subd. (a)(4) & (6).) This statutory bar was a presumption that could be rebutted with clear and convincing evidence. (*Estate of Winans* (2010) 183 Cal.App.4th 102, 113; Former Prob. Code, § 21351.)

Frederick was exempt from the operation of former Probate Code section 21350 because he was related by marriage to Vere. (Former Prob. Code, § 21351.) Former Probate Code section 21351, subdivision (a) provided that section 21350 did not apply if the transferor was related by blood or marriage to the transferee. Subdivision (g) provided that " 'related by blood or marriage' " included heirs of the transferor. (Former Prob. Code, § 21351, subd. (g).) The child of a decedent's predeceased spouse is an heir of the transferor for purposes of the exception. (*Hernandez v. Kieferle* (2011) 200 Cal.App.4th 419, 432-433.) Thus, there was no presumption of undue influence.

## III

## Twila's Executed Deeds

As indicated, Twila's 2005 trust provided that Frederick would receive both the Red Dog Road and Farm properties, as well as her interest in the residence, Valley View, subject to a life estate for Vere. The 2005 trust also left bank accounts and securities to Frederick. However, shortly after Clifford came to Grass Valley to visit his mother,

8

Twila set up an appointment with Tassone to make changes in her will and trust. She said she wanted to make the distribution of her estate more equal.

Frederick testified that he, Twila, and Clifford had a meeting prior to the visit to Tassone's office for the purpose of changing Twila's trust. The purpose of the meeting was to discuss the change and to protect Frederick's properties so they would not be affected by the trust provisions. The brothers would each receive a 50 percent share of her interest in the Valley View house, and Clifford would receive the contents of a snapshot account. After Twila's meeting with Tassone, Frederick realized the Red Dog Road and the Farm had been left in the trust. Twila was upset that a mistake had been made, and she wanted to deed the properties to Frederick. Frederick told Clifford that Twila was going to deed the properties to him (Frederick) and Clifford said it was okay because he knew all along that the properties were Frederick's.

Frederick testified Twila purchased the Red Dog Road property for him because he had helped her so much over the years. Frederick paid $30,000 toward the purchase price of $180,000 for the Red Dog Road property. After the property was purchased in 2004, Frederick paid all the utilities and taxes and did all the upkeep on the property.

Clifford argues there was substantial evidence that Frederick intended to subvert Twila's March 29, 2007, amendment to her will and trust. He fails again to understand the review of factual determinations on appeal. Assuming there was substantial evidence to support Clifford's claim, the only question before us is whether there was substantial evidence to support the judgment. Additionally, as much of the evidence supporting the judgment consisted of Frederick's testimony, we accept the trial court's determination that Frederick's testimony was credible. (*Estate of Auen* (1994) 30 Cal.App.4th 300, 311.)

Clifford also argues that there is a presumption that a "transaction" between a victim and fiduciary is fraudulent or the product of undue influence, and that Frederick had the burden of proving the deeds were not the product of undue influence. However,

9

where there is a presumption of undue influence and the burden shifts to the defendant to show good faith, the question of whether the presumption has been rebutted is one for the trier of fact. (*Camperi v. Chiechi* (1955) 134 Cal.App.2d 485, 504.) On appeal it is "incumbent upon the appellant in order to prevail upon the appeal to show that no credible evidence was produced from which the reasonable inference might be drawn that the grantor acted voluntarily and with full knowledge of the facts and a complete understanding of the effect of the transaction." (*O'Neill v. Dennis* (1952) 109 Cal.App.2d 210, 212.) The finding of the trial court will not be reversed unless there is no substantial evidence to support the finding. (*Azevedo v. Leavitt* (1946) 76 Cal.App.2d 321, 324.)

There was evidence that Twila did not want the property to go to Clifford because she had already provided for him. In fact, the property was not given to Clifford in Twila's 2005 will. A provision in the 2005 will stated: "I have expressly made no provision in this will for my son Clifford P. Niman III because I feel that I have already adequately provided for him in the past." This, together with Frederick's testimony that Twila discussed with both sons that she would change her will and trust to make things more equitable between them, but that she would not put the Farm or the Red Dog Road property in the trust, and that Clifford agreed to this, was sufficient to support the trial court's finding that Twila was not unduly influenced when she deeded the properties to Frederick.

IV

Removal of Frederick from Trust Administration

Clifford's petition asked that Frederick be removed as cotrustee of Twila's trust. As Frederick died after the appeal in this matter was briefed, we advised the parties that we would conclude this issue to be moot if we received no supplemental briefing from them. Having received the parties' agreement by way of a joint supplemental brief, we conclude the issue is moot.

10

DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278 (a)(1) & (2).)


          /s/\
          Blease, Acting P. J.


We concur:


    /s/\
    Hull, J.


    /s/\
    Butz, J.